UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROBERT SIMPSON,    **REPORT AND RECOMMENDATION**

                       Petitioner,    07-CV-00651(A)(M)

v.

THOMAS POOLE,

                       Respondent.

_____

        Petitioner Robert Simpson, an inmate acting *pro se*, filed a petition under 28 U.S.C. §2254 for a writ of habeas corpus on October 1, 2007 [1].[1] Hon. Richard J. Arcara referred the matter to me pursuant to 28 U.S.C. §636(b)(1), for all proceedings necessary to determine the factual and legal issues presented and for preparation of a Report and Recommendation [8]. For the following reasons, I recommend that the petition be denied.

## BACKGROUND

        Petitioner was charged with murder in the second degree (NY Penal Law §125.25(1)), manslaughter in the first degree (§125.20(1)), and criminal possession of a weapon in the third degree (§265.02(1)) in connection with the stabbing of his roommate, Salaam Muhammad, on December 14, 2003. Following a one-day bench trial in Erie County Supreme Court before Hon. Mario Rossetti, petitioner was convicted of first degree manslaughter and third degree weapons possession. September 1, 2004 Proceeding, pp. 2-3. He was sentenced as a second felony offender to concurrent terms of 20 years incarceration with a five year period of

---

[1]    Bracketed references are to the CM/ECF docket entries.

post release supervision on the manslaughter charge and three and one-half to seven years on the weapons possession charge. November 15, 2004 Proceeding.

At trial, evidence was presented that Mr. Muhammad and petitioner resided together in the upper apartment of 89 Brownell Street in Buffalo, New York, a halfway house [T15].[2] Michael Barron, a resident of the lower apartment of 89 Brownell Street, testified that on the day of the incident he heard a "heated argument" and then "heard a scuffle, some kind of a struggle and somebody hit the floor" [T15-8]. A few minutes later he heard an individual leave the apartment and the building [T18]. Shortly thereafter, he heard someone enter the building and the upper apartment [T19]. Petitioner then knocked on Mr. Barron's door and was "frantic", indicating that he had found Mr. Muhammad murdered [T19].

Sung-ook Baik, M.D., a medical examiner, testified that Mr. Muhammad died from multiple stab wounds to his face, neck and chest [T67]. Cocaine was found in Mr. Muhammad's system, and no defensive wounds were found on his body [T60, 68-9].

Paula Carducci, a detective with the City of Buffalo Police Department, testified that a knife was recovered from the sink of petitioner's apartment and a wash cloth containing Mr. Muhammad's blood was recovered from petitioner's pocket [T41-3]. James Lonergan, a detective with the City of Buffalo Police Department, testified that after being confronted with an inconsistency in his initial statement to police, petitioner gave a typewritten sworn statement admitting to stabbing Mr. Muhammad seven or eight times after he refused to re-pay him $50 [T81, 85-6].

---

[2]   "T" refers to the August 30, 2004 trial transcript.

Petitioner appealed his conviction to the New York State Supreme Court, Appellate Division, Fourth Department, arguing: (1) that he was deprived of meaningful appellate review by the absence in the record on appeal of a written waiver of jury trial; (2) that the court erred in admitting his pre-Miranda oral statements; (3) that his convictions were against the weight of the evidence and legally insufficient; (4) that he was illegally sentenced as a second felony offender; and (5) that his sentence was harsh and excessive. Appendix, Ex. B.

By decision dated December 22, 2006, the Appellate Division unanimously affirmed petitioner's conviction (People v. Simpson, 35 A.D.3d 1182 (4th Dep't 2006), lv. denied, 8 N.Y. 3d 990 (2007)). Other than for his claim that his sentence was harsh and excessive, the habeas petition raises the same grounds raised to the Appellate Division. Petition [1].

## ANALYSIS

A.     **Habeas Petition**

     1.     **Exhaustion and Procedural Default**

A petitioner must exhaust all available state remedies, either on direct appeal or through a collateral attack on his conviction, before he may seek habeas relief in federal court. 28 U.S.C. §2254(b); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). In order to exhaust all state remedies, "the petitioner must appraise the highest state court of both the factual and legal premises of the federal claims ultimately asserted in the habeas petition." Galdemez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005), cert. denied, 544 U.S. 1025 (2005).

"When a claim has never been presented to a state court, a federal court may theoretically find that there is an absence of available State corrective process under §2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state form would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). "This apparent salve, however, proves to be cold comfort to most petitioners because it has been held that when the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would not find the claims procedurally barred, federal habeas courts must deem the claims procedurally defaulted." Id.

Significantly, the "dismissal of a habeas claim on the ground that it was procedurally defaulted differs crucially from a dismissal for failure to exhaust state remedies. Dismissal for a procedural default is regarded as a disposition of the habeas claim on the merits." Id. Nevertheless, a claim can avoid procedural default if the petitioner shows "cause for the default and prejudice, or demonstrates that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)". Id.

Furthermore, the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "permits a habeas court to reject a claim on the merits notwithstanding the fact that it is unexhausted. 28 U.S.C. §2254(b)(2). However, there exists no complementary power to grant a habeas petition on an unexhausted claim". Id. at 91 n. 5.

### 2. Standard of Review

A habeas corpus petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of that claim:

> "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or,
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d).[3]

"A determination of a factual issue made by a State court shall be presumed to be correct", unless the petitioner rebuts this presumption by "clear and convincing evidence". 28 U.S.C. §2254(e)(1).

### B. Loss of Jury Waiver

Petitioner argues that he "was denied his constitutional rights by virtue of the lack of written waiver of his right to jury trial". Petition [1], Ground One. In response, respondent argues that this argument is not cognizable on habeas review because it involves an alleged

---

[3] "'[C]ontrary to' and 'unreasonable application' clauses have independent meaning. . . . A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. . . . The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. . . . The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed . . . that an unreasonable application is different from an incorrect one." Bell v. Cone, 535 U.S. 685, 694 (2002).

violation of state statutory law (N.Y. Crim. P. Law ("CPL") §320.10). Respondent's Memorandum of Law [7], Point One.

>At the conclusion of the <u>Huntley</u> hearing the following exchange occurred:
>
>"Mr. LoTempio [(petitioner's counsel)]: I think we're going to waive the jury. I think that's what we're going to do, Judge.
>The Court: Have you got a waiver? Let's do it now. . . . Mr. Simpson, you're here with Mr. LoTempio, your attorney, and you have - - you understand you have a constitutional right that the matter be adjudicated by twelve members of the community, a jury. Do you understand that, sir?
>
>The Defendant: Yes, sir.
>
>The Court: And those people would be selected after questioning by Mr. Mordino and your attorney and the court. Do you understand that?
>
>The Defendant: Yes, sir.
>
>The Court: And basically it's my understanding that you wish to now waive your right to have twelve people acting as jury, fact finder in this case, and you want the court to act as the jury. Is that correct?
>
>The Defendant: Yes, sir.
>
>The Court: And I would be, therefore, making a decision, rendering a verdict on the matter as well as being the judge of the law in the case. Do you understand that?
>
>The Defendant: Yes, sir.
>
>The Court: You've gone over this with your attorney?
>
>The Defendant: Yes, sir.
>
>The Court: And anybody forcing you to do this?
>
>The Defendant: No.

       The Court:  So, you wish that the court -- you want the court to act as judge and jury for this case, is that correct?

       The Defendant:  Yes, sir.

       The Court:  I'd ask that you sign that document after reviewing it with your attorney.  Let the record reflect that Mr. Simpson after consulting with his attorney has executed the waiver of jury trial in open court.  Both attorney and client, defendant, have executed the waiver. The court finds that it complies with the provisions of the Criminal Procedure Law and hereby approves same" [H29-31].[4]

       CPL §320.10(1) provides that "the defendant . . . may at any time before trial waive a jury trial and consent to a trial without a jury in the superior court in which the indictment is pending".  "Such waiver must be in writing and must be signed by the defendant in person in open court in the presence of the court, and with the approval of the court." CPL §320.10(2).

       As argued by respondent, a failure to comply with CPL §320.10 does not warrant habeas relief "[b]ecause federal habeas corpus relief does not lie for errors of state law". Lewis v. Jeffers, 497 U.S. 764, 780 (1990).  Moreover, "[p]etitioner raised this claim on direct appeal but failed to do so in federal constitutional terms, thereby rendering the claim unexhausted for federal habeas purposes." Robles v. Brandt, 2010 WL 2925973, *6 (W.D.N.Y. 2010) (Telesca, J.).

       Even assuming that petitioner's claim was cognizable and exhausted, I would deny it on the merits because the transcript from the Huntley hearing unequivocally established that petitioner waived his right to a jury trial and signed a waiver after an extensive colloquy with the court and consultation with counsel [H29-31].  Thus, it cannot be said that the missing

---

    [4]    "H" refers to the June 22, 2004 Huntley hearing.

waiver precluded full and fair appellate review.  See Pruitt v. Hutto, 574 F.2d 956, 957 (8th Cir. 1978), cert. denied, 439 U.S. 870 (1978) (rejecting argument that failure to produce the trial transcript denied the petitioner full and fair appellate review as required by the Due Process clause).  Therefore, I recommend that this aspect of the petition be denied.

**C.     Admission of Pre-Miranda Statements**

Petitioner argues that the "Court erred in failing to suppress pre-Miranda statements that were the product of custodial interrogation and violative of N.Y. Crim. P. Law ("CPL") §710.30.  First, petitioner was not given notice that oral statements, in which he denied involvement in the killing, would be used against him at trial.  Thus, he was unable to fully contest the constitutionality of the interrogation that produced the pertinent oral statement." Petition [1], Ground Two.  In response, respondent argues that "the fact that his pre-Miranda statements were not included in the CPL 710.30 notice is not a federal constitutional claim cognizable in this Court." Respondent's Memorandum of Law [7], Point Two.

A Huntley hearing was conducted on June 22, 2004.  James Lonergan, a Detective Sergeant with the Buffalo Police Department testified that when he responded to 89 Brownell Street, petitioner was considered a witness and transported to police headquarters to give a statement [H3-6].  Petitioner was not handcuffed during his transport. Id., p. 6.  At police headquarters, petitioner provided Detective Lonergan with some general facts regarding the incident. Id., p. 7.  He then agreed to wait until a detective was free to take his typewritten statement. Id.  In the interim, Detective Lonergan learned that one of petitioner's initial statements was not truthful. Id., pp. 7-8.  Thus, petitioner was advised of his Miranda rights. Id.,

p. 8. When confronted with his false representation, petitioner "teared up and . . . asked [Detective Lonergan] if he would get a manslaughter charge". Id., pp. 10-11. A sworn statement was then voluntarily given by petitioner without requesting counsel. Id., pp. 11-12. Petitioner presented no witnesses at the Huntley hearing.

The CPL §710.30 statement provided to petitioner's counsel during discovery stated: "The oral statement was made just prior to the written statement. It was made to Detective James Lonergan and contained the same information as the written statement. In the oral statement the defendant initially denied knowledge of Muhammad's death but later admitted the stabbing". Id., p. 17. Trial counsel moved to preclude petitioner's pre-Miranda statements on the basis that they were not included in the CPL §710.30 notice provided to petitioner, and the following exchange occurred:

> "Mr. Lotempio: . . . [M]y problem is that the . . . detailed statements, make it look like Mr. Simpson was attempting to cover up the incident initially and I think that I should have been alerted to that, at least the details of that cover up attempt. . . .
>
> The Court: So, as I understand it basically you're stating that the written statement that was taken was done properly, not violating Mr. Simpson's constitutional rights, however, you're directing yourself to the oral statement.
>
> Mr. LoTempio: That's correct, the details of the oral statement.
>                              . . .
>
> Mr. Mordino [(prosecutor)]: . . . [T]he 710.30 statement does say that in the oral statement he denied knowledge of Mr. Muhammed's death. I think at least that portion of it has to be allowed in because that's in the 710.30 notice." . Id., pp. 26-7.

CPL §710.30(1) provides that "[w]henever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily

made would render the evidence thereof suppressible upon motion pursuant to subdivision three of section 710.20 . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered." Petitioner's claim that he did not receive proper notice under CPL §710.30 "raises solely an issue of state law. Because the claim does not present an issue of federal or constitutional law, it is not cognizable by this Court in a petition for habeas corpus." Brown v. Woods, 2010 WL 2605744, *4 (S.D.N.Y. 2010)(citing cases).

Alternatively, petitioner argues that "even if the petitioner were given fair notice, the pre-Miranda statements were inadmissible because they were the product of a custodial interrogation." Petition [1], Ground Two. In response, respondent argues that "[p]etitioner's pre-*Miranda* statements were not obtained at a time when there was either a formal arrest or a restraint on petitioner's freedom of movement to the degree associated with a formal arrest and, thus, the statements were admissible". Respondent's Memorandum of Law [7], Point Two.

"A suspect is entitled to *Miranda* warnings only if he or she is interrogated while 'in custody.'" Tankleff v. Senkowski, 135 F. 3d 235, 243 (2d Cir. 1998). "In determining whether a suspect was in custody, we look at all the circumstances surrounding the interrogation. The relevant inquiry is 'how a reasonable man in the suspect's position would have understood his situation.' . . . . And custody exists for *Miranda* purposes if a reasonable person in that position would 'have felt he or she was not at liberty to terminate the interrogation and leave.'" Id. "The *Miranda* custody inquiry is an objective test . . . . designed to give clear guidance to the police." Yarborough v. Alvarado, 541 U.S. 652, 667, 668 (2004). "We do not ask police officers to consider . . . contingent psychological factors when deciding whether suspects should be advised of their *Miranda* rights . . . . The inquiry turns too much on the suspect's subjective

state of mind and not enough on the 'objective circumstances of the interrogation.'" Id. at 668-669.

"[T]he term 'interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect". Rhode Island v. Innis, 446 U.S. 291, 301 (1980).

Petitioner was voluntarily transported, without handcuffs, to police headquarters to give a statement because he was believed to be a witness to the homicide, rather than a suspect [6]. At headquarters, he informed Detective Lonergan of his observations, and then voluntarily agreed to wait at headquarters until a detective was free to take his typewritten statement. Id., p. 7.

There was no evidence introduced at the Huntley hearing that petitioner was subjected to continuous questioning, was handcuffed, or advised that he was not free to leave prior to his Miranda rights being administered. The fact that petitioner's statements were made to a detective at police headquarters, standing alone, does not transform petitioner's pre-Miranda statements into a custodial interrogation. See Oregon v. Mathiason, 429 U.S. 492, 495 (1977)("a noncustodial situation is not converted to one in which Miranda applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment'"). "[U]nless the facts clearly establish custody, a state court should be deemed to have made a reasonable application of clearly established Supreme Court law in concluding that custody for Miranda purposes was not shown". Cruz v. Miller, 255 F.3d 77, 85-86 (2d Cir. 2001).

Therefore, the record in this case makes clear that the trial court did not unreasonably apply federal law in holding petitioner's pre- Miranda statements admissible, and I recommend that this aspect of the petition be denied. *See* Cunningham v. Conway, __ F.Supp.2d__, 2010 WL 2383483, *9-10 (W.D.N.Y. 2010) (Larimer, J/Bianchini, M.J.).

D.  **Legal Sufficiency of the Evidence**

Petitioner argues that "[t]he evidence was legally insufficient to support petitioner's conviction" because "[t]here was no evidence that petitioner's actions were not justified or, in any event, that he acted intentionally in causing the victims death. There were no eyewitnesses to the incident, and the People's case was based chiefly on petitioner's admission. the evidence showed that the victim had cocaine in his system at the time of the incident, and that he exchanged blows with the petitioner over a money dispute. There was no evidence that pet. [*sic*] actions were unjustified". Petition [1], Ground Three. In response, respondent argues that this claim is procedurally defaulted because he failed to preserve this argument for review. Respondent's Memorandum of Law [7], Point Three.

The Appellate Division rejected petitioner legal sufficiency argument, finding that "[d]efendant failed to preserve for our review his contention that the conviction is not supported by legally sufficient evidence based on the applicability of the justification defense . . . . We reject the further contention of defendant that the conviction is not supported by legally sufficient evidence because his conduct was reckless, not intentional. . . . The evidence that defendant stabbed the victim multiple times is legally sufficient to establish that defendant intended to cause serious physical injury to the victim". Simpson, 35 A.D.3d at 1182.

"New York's contemporaneous objection rule to preserve appellate review, New York Criminal Procedure Law §470.05(2), is an adequate and independent state procedural rule precluding review." Brown v. Walsh, 2009 WL 3165712, *4 (N.D.N.Y. 2009). "Petitioner may only seek habeas review if he shows 'cause for default and prejudice resulting therefrom.'" Wright v. Conway, 2009 WL 2982978, *8 (N.D.N.Y.2009) (*quoting* Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir.1995)).  Therefore, I find petitioner's claim to be procedurally defaulted, and he has failed to demonstrate any cause for the default or prejudice arising from it.

Even if petitioner's claim was not procedurally defaulted, I find it to be without merit.  Petitioner maintains a "'very heavy burden'" in challenging the legal sufficiency of the evidence underlying his conviction. Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995), cert. denied, 515 U.S. 1136 (1995).  He "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no  rational trier of fact could have found proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 324 (1979).  "This inquiry does not require a court to 'ask  itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'. . .  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. at 318-9.

Petitioner argues that the evidence presented at trial was legally insufficient to establish intentional murder. Petition [1], Ground Three. I disagree. A person is guilty of manslaughter in the first degree when "[w]ith intent to cause serious physical injury to another person, he causes the death of such person". Penal Law §125.20(1).

Petitioner's trial counsel argued that petitioner's actions were justified as self-defense and that it constituted the lesser included offense of manslaughter in the second degree (T13-4 and 100). However, rather than calling for help, petitioner attempted to cover up his crime by re-entering the apartment and lying about finding Mr. Muhammad's body. It was not until after he was presented with an inconsistency in his initial story that petitioner finally confessed. Even at that point, petitioner never indicated that he stabbed Mr. Muhammad in self-defense. Instead, he indicated that he stabbed him over a $50 debt. The medical examiner also testified that petitioner was stabbed multiple times in the face, chest and neck.

I find that there was ample evidence introduced at trial, especially when viewed in a light favorable to the prosecution, that petitioner acted intentionally and without justification. Therefore, I recommend that this aspect of the petition be denied.

**E.     Second Felony Offender Status**

Petitioner argues that he "was sentenced illegally under CPL §400.21" because he "was not afforded a full and fair opportunity to contest the constitutionality of his adjudication as a second-felony-offender, where the prosecution failed to file a mandatory statement pursuant to CPL 400.21(2) naming the dated [*sic*] and place of the alleged prior felony conviction". Petition [1], Ground Four. In response, respondent argues that petitioner's claim is unexhausted

and procedurally defaulted. Respondent's Memorandum of Law [7], Point Four. I agree with respondent.

CPL §400.21(2) provides, *inter alia*, that "[w]hen information available to the court . . . prior to sentencing for a felony indicates that the defendant may have previously been subjected to a predicate felony conviction, a statement must be filed by the prosecutor before sentence is imposed setting forth the date and place of each alleged predicate felony" conviction and whether the predicate felony conviction was a violent felony."

Instead of petitioner being provided with a written notice pursuant to CPL §400.21(2), the following exchange regarding petitioner's prior felony conviction occurred at the sentencing:

> "Mr. Mordino: . . . [T[he defendant has a prior conviction which took place on 10/23/98 in which he was convicted of attempted assault in the second degree and sentenced to one to three years, which would make him a second felony offender. We are of the understanding that the defendant is going to waive a formal notice and will agree to the fact that he was, in fact, convicted and be sentenced as a second felony offender.
>
> Mr. LoTempio: Judge, I've discussed with Mr. Simpson his right to not only have the formal papers served surrounding the prior felony but also have a hearing to determine whether or not that felony was, in fact, him and he's going to waive both and admit to the prior felony on the record today, Judge.
>
> The Court: All right. Is that correct, Mr. Simpson?
>
> The Defendant: Yes, sir.
>
> The Court: So that, therefore, you understand that I must sentence you as a second felony offender.

The Defendant: Yes, sir." [S2-3].[5]

The Appellate Division rejected petitioner's claim arising from the alleged violation of CPL §400.21, finding that "[d]efendant failed to preserve for our review his contention that he was illegally sentenced as a second felony offender based on the People's failure to file a statement pursuant to CPL 400.21 (2) . . . . In any event, defendant's contention lacks merit. Defendant expressly waived that filing and thus waived strict compliance with CPL 400.21." Simpson, 35 A.D.3d at 1183.

Petitioner's claim that he was improperly sentenced as a second felony offender is procedurally defaulted, and he has failed to demonstrate cause for the default or prejudice therefrom. See Delston v. New York, 2010 WL 3004591, *7 (E.D.N.Y. 2010). Moreover, petitioner challenged his sentence on appeal solely as a violation of CPL §400.21(2). By failing to raise this claim in federal constitutional terms, it is rendered unexhausted. See Robles, 2010 WL 2925973 at *6.

Even assuming that petitioner's claim was exhausted and not procedurally defaulted, I would deny it on the merits because petitioner waived his right to a written statement pursuant to CPL §400.21(2) and was orally apprised of the court's intention to sentence him as second felony offender and his right to a hearing. Therefore, I recommend that this aspect of the petition be denied.

---

[5]     "S" refers to the November 15, 2004 sentencing.

F.  **Certificate of Appealability**

For a Certificate of Appealability to issue, the petitioner must make a "substantial showing of the denial of a constitutional right ." 28 U.S.C. §2253(c)(2). To make the required "substantial showing", the petitioner must establish that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Rhagi v. Artuz, 309 F.3d 103, 106 (2d Cir. 2002) (per curiam), cert. denied, 538 U.S. 950 (2003). Petitioner has made no such substantial showing of the denial of a constitutional right in this case. Accordingly, I recommend that a Certificate of Appealability not be issued.

**CONCLUSION**

For these reasons, I recommend that the petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254 be denied. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I also recommend that a Certificate of Appealability not be issued.

Unless otherwise ordered by Judge Arcara, any objections to this Report and Recommendation must be filed with the clerk of this court by April 15, 2011 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge".  Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

**SO ORDERED**.

Dated:  March 29, 2011

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge